```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                     TAMPA DIVISION

MARIO ROJO,

      Plaintiff,

v.                                Case No. 8:15-cv-1982-T-33JSS

SERGEANT SCOTT SERGEANT HOLDERBAUM,
individually, and SHERIFF
BOB GUALTIERI, in his official
capacity as Sheriff of Pinellas
County,

      Defendants.
_____/
```

**ORDER**

This matter comes before the Court upon consideration of Defendants Sergeant Scott Holderbaum and Sheriff Bob Gualtieri's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. # 25), filed on November 9, 2015. Plaintiff Mario Rojo filed a response on December 3, 2015, (Doc. # 30), and, with leave of Court, Sergeant Holderbaum and Sheriff Gualtieri filed a reply on December 11, 2015 (Doc. # 33). For the reasons that follow, the Court denies the Motion.

**I.   Background**

Rojo was arrested on December 20, 2011, and transported to the Pinellas County Jail Complex. (Doc. # 20 at ¶¶ 12,

1

15). As part of the booking process, Rojo was subjected to a strip search that took place in a changing room. (Id. at ¶ 16). Rojo was accompanied by Sergeant Holderbaum and Deputy Thorn, a non-party to this action. (Id.). Sergeant Holderbaum instructed Rojo to remove his clothing and "[a]fter [Rojo] was directed to remove his pants, he did so, dropping them to the floor. Defendant Sergeant Holderbaum directed [Rojo] to pick up the pants from the floor and to hand them to him, which [Rojo] did." (Id. at ¶¶ 17, 19).

Rojo "was then directed to remove his boxer shorts and to hand them to [Sergeant Holderbaum] when . . . [Rojo] allegedly kicked his boxer shorts towards [Sergeant Holderbaum]. The Amended Complaint further alleges that Rojo was not resisting Sergeant Holderbaum or any other officer. (Id. at ¶ 38). In response, [Sergeant Holderbaum] punched the left side of [Rojo's] face with a closed fist with such force that [Rojo] was thrown backwards." (Id. at ¶¶ 20-21). It is alleged that Rojo was hit so hard he either lost consciousness or entered "an altered state of consciousness." (Id. at ¶ 22). Rojo "suffered a complex nasal fracture with significant displacement and comminution," for which he underwent surgery. (Id. at ¶¶ 23, 27). Rojo's front tooth was also chipped. (Id. at ¶ 24).

When he came to, Rojo was pinned down on the floor by four or five officers and was handcuffed with his hands behind his back. (Id. at ¶ 25). Rojo was then wheeled into an isolation room, where he waited in a restraint chair for approximately 20 minutes for a nurse, who confirmed that Rojo's nose was broken. (Id. at ¶ 26).

Rojo filed his initial Complaint on August 26, 2015. (Doc. # 1). Upon the motion of Sergeant Holderbaum and Sheriff Gualtieri, the Court dismissed the Complaint, and granted Rojo leave to file an amended complaint. (Doc. # 18). Rojo timely filed his Amended Complaint. (Doc. # 20). The Amended Complaint brings three counts, which are listed below.

> Count I: 42 U.S.C. § 1983——Excessive Force under the Fourteenth Amendment against Defendant Sergeant Holderbaum;
> Count II: Florida Battery Claim against Defendant Sergeant Holderbaum; and
> Count III: Florida Battery Claim against Sheriff Bob Gualtieri in His Official Capacity as Sheriff of Pinellas County——Vicarious Liability of Defendant Sergeant Holderbaum, brought in the alternative to Count II.

(Id. at 5, 7, 8).

## II. Legal Standard

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth

3

Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) (stating "[o]n a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true"). However:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Furthermore, "[t]he scope of review must be limited to the four corners of the complaint." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002).

### III. Discussion

The Court first addresses Count I of the Amended Complaint, which brings a claim of excessive force against Sergeant Holderbaum. (Doc. # 20 at 5). "Qualified immunity

4

affords complete protection to government officials sued individually," Terrell v. Smith, 668 F.3d 1244, 1250 (11th Cir. 2012), except in cases where "the law preexisting the defendant official's supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances." Pace v. Capobianco, 283 F.3d 1275, 1282 (11th Cir. 2002); see also Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002). Qualified immunity "protect[s] from suit 'all but the plainly incompetent or one who is knowingly violating the federal law.'" Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting Willingham v. Loughnan, 261 F.3d 1178, 1187 (11th Cir. 2001)). "In all but exceptional cases, qualified immunity protects governmental officials performing discretionary functions from the burdens of civil trials and from liability." McMillian v. Johnson, 88 F.3d 1554, 1562 (11th Cir. 1996).

"While qualified immunity is typically addressed at the summary judgment stage of the case, the defense may be raised and considered on a motion to dismiss." Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001). Such a motion to dismiss

5

"will be granted if the 'complaint fails to allege the violation of a clearly established constitutional right.'" Id. (quoting Williams v. Ala. State Univ., 102 F.3d 1179, 1182 (11th Cir. 1997)). The Court accepts the facts as alleged in the complaint as true and draws all reasonable inferences in favor of the non-moving party. Id.

"[T]he official must first establish that he was performing a 'discretionary function' at the time the alleged violation of federal law occurred." Crosby v. Monroe Cty., 394 F.3d 1328, 1332 (11th Cir. 2004). Rojo's Amended Complaint, which brings a Section 1983 claim solely against Sergeant Holderbaum, concedes Sergeant Holderbaum was performing a discretionary function. (Doc. # 20 at ¶¶ 11, 31). Thus, the burden falls upon Rojo to show that Sergeant Holderbaum is not entitled to qualified immunity. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004).

This Court follows a two-part analysis in determining whether qualified immunity applies. Vinyard, 311 F.3d at 1346. The first part asks "whether [the] plaintiff's allegations, if true, establish a constitutional violation." Id. (quoting Hope v. Pelzer, 536 U.S. 730, 736 (2002)) (internal quotation marks omitted) (alteration in original).

The second part asks "whether the right was clearly established." Id. (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)) (internal quotation marks omitted). Courts have discretion to decide the order in which to address the two parts. Pearson v. Callahan, 555 U.S. 223, 236 (2009). Nevertheless, "[b]oth elements must be satisfied for an official to lose qualified immunity." Grider v. City of Auburn, 618 F.3d 1240, 1254 (11th Cir. 2010).

A brief discussion of the impact of the Supreme Court's decision in Kingsley v. Hendrickson, 135 S.Ct. 2466, 2472-73 (2015), abrogating Bozeman v. Orum, 422 F.3d 1265 (11th Cir. 2005), is required. Eleventh Circuit precedent allowed a plaintiff alleging excessive force under the Fourteenth Amendment to overcome qualified immunity by only satisfying the first prong, i.e., that a constitutional violation occurred. Fennell v. Gilstrap, 559 F.3d 1212, 1216-17 (11th Cir. 2009) (citing Johnson v. Breeden, 280 F.3d 1308, 1321-22 (11th Cir. 2002)). This rule was created "because, for an excessive-force violation of the Eighth or Fourteenth Amendments, 'the subjective element required to establish it is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly

established to be a violation of the Constitution.'" Id. (quoting Johnson, 280 F.3d at 1321-22).

However, the Supreme Court in Kingsley held "that a pretrial detainee must show only that the force purposely or knowingly used against him was objectively reasonable." 135 S.Ct. at 2473. Thus, now that the subjective inquiry is no longer a part of an excessive-force claim under the Fourteenth Amendment, a plaintiff alleging such a claim must satisfy both prongs. See id. at 2474-75 (noting the fact that "an officer enjoys qualified immunity and is not liable for excessive force unless he has violated a 'clearly established' right . . .," when explaining how the objectively reasonable standard adequately protects officers in jail settings).

### A. Constitutional Violation

Excessive force claims involving a pre-trial detainee fall under the purview of the Fourteenth Amendment to the United States Constitution. Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996). In deciding whether the force used was, constitutionally speaking, excessive, this Court applies an objective standard. Kingsley, 135 S.Ct. at 2472-73. "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" Id. (quoting Graham

v. Connor, 490 U.S. 386, 396 (1989)). The Supreme Court has provided a non-exhaustive list of factors to consider when determining reasonableness:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id.

Furthermore, a "court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Kingsley, 135 S.Ct. at 2473 (citing Graham, 490 U.S. at 396). A court "must . . . give a 'wide range of deference to prison officials acting to preserve discipline and security,' including when considering '[d]ecisions made at the scene of a disturbance.'" Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (per curiam) (citations omitted).

Applying the Kingsley factors, the Court determines that Rojo has sufficiently alleged a constitutional violation to survive the pending Motion to Dismiss. It is unclear from the Amended Complaint whether Rojo, in fact, kicked his boxer shorts towards Sergeant Holderbaum. Compare (Id. at ¶ 20)

9

(stating Rojo "allegedly kicked his boxer shorts towards" Sergeant Holderbaum), with (Id. at ¶ 38) (stating Rojo did not actively resist). At this juncture, the Court is required to draw all reasonable inferences in favor of Rojo. See Stephens, 901 F.2d at 1573. Thus, for purposes of resolving the instant Motion to Dismiss, Rojo was not actively resisting. (Id. at ¶ 38).

Furthermore, even assuming Rojo did kick his boxer shorts towards Sergeant Holderbaum, the severity of the security problem—a detainee kicking underwear towards an officer—is relatively low. The Court also notes that the quantum of force—a punch to Rojo's face with such force that his body was thrown backwards, causing Rojo to either lose, or fall into an altered state of, consciousness and which necessitated surgery to correct his broken nose (Doc. # 20 at ¶¶ 20-24, 27)—outweighs the need for force given the allegations in the Amended Complaint. Therefore, the Court proceeds to the second step of the analysis.

**B.     Clearly Established Law**

Under this step of the analysis, the "'salient question . . . is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.'" Tolan v.


Cotton, 134 S.Ct. 1861, 1866 (2015) (quoting Hope, 536 U.S. at 741) (alterations in original). "[T]he touchstone of qualified immunity is notice." Holmes v. Kucynda, 321 F.3d 1069, 1078 (11th Cir. 2003).

The Eleventh Circuit has established two methods for determining whether the right in question was clearly established at the time of the alleged misconduct. Fils v. City of Aventura, 647 F.3d 1272, 1291 (11th Cir. 2011). Under the first, "decisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state (here, the Supreme Court of Florida) can clearly establish the law." McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007) (citing Marsh v. Butler Cty., Ala., 268 F.3d 1014, 1032 n.10 (11th Cir. 2001) (en banc)). "For a right to be clearly established, previous case law must have developed it in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate federal law." GJR Invs., Inc. v. Cty. of Escambia, 132 F.3d 1359, 1366 (11th Cir. 1998). "This method does not require that the case law be 'materially similar' to the officer's conduct; 'officials can still be on notice that their conduct violates established law even in

novel factual circumstances.'" Fils, 647 F.3d at 1291 (quoting Hope, 536 U.S. at 741).

"Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners." Cottrell, 85 F.3d at 1490. But, "the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." Id.

The second method "offers a narrow exception to the general rule that only case law and specific factual scenarios can clearly establish a constitutional violation." Bussey-Morice v. Gomez, 587 Fed. Appx. 621, 627-28 (11th Cir. 2014). However, that exception "is a difficult one to meet." Id. at 628.

Upon review of the Amended Complaint, the Court determines Rojo has sufficiently alleged facts demonstrating that the right was clearly established. The Amended Complaint alleges, and again this Court must accept the allegations as true at this stage, that Rojo was not actively resisting (Doc. # 20 at ¶ 38). Eleventh Circuit case law holds that using force on a non-resisting person is excessive. See, e.g., Brown

12

v. City of Huntsville, 608 F.3d 724, 738 (11th Cir. 2010); Hadley v. Gutierrez, 526 F.3d 1324, 1330, 1333-34 (11th Cir. 2008). Therefore, for purposes of the pending Motion to Dismiss, the Court determines Rojo has sufficiently alleged facts to carry his burden.

### C.  State Law Claims

Sergeant Holderbaum and Sheriff Gualtieri also move to dismiss Counts II and III of the Amended Complaint; however, the Court finds Sergeant Holderbaum and Sheriff Gualtieri's arguments unpersuasive. Sergeant Holderbaum and Sheriff Gualtieri first argue that Rojo has not sufficiently alleged Sergeant Holderbaum's intent. However, intent is a state mind, which, even under the stricter requirements of Federal Rule of Civil Procedure 9(c), may be alleged generally.

Sergeant Holderbaum and Sheriff Gualtieri next argue that Counts II and III should be dismissed because in Count II Rojo alleges Sergeant Holderbaum acted with a malicious intent, but in Count III Rojo alleges Sergeant Holderbaum did not act with a malicious intent. According to Sergeant Holderbaum and Sheriff Gualtieri, "both obviously cannot be true." (Doc. # 25 at 19). But, under Rule 8(d)(3), "[a] party may state as many separate claims . . . as it has, regardless of consistency."

13

Furthermore, Sergeant Holderbaum and Sheriff Gualtieri argue Rojo has failed to allege facts showing entitlement to relief under a civil battery claim. "A battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." City of Miami v. Sander, 672 So. 2d 46, 47 (Fla. 3d DCA 1996). Upon review of the Amended Complaint, the Court finds that the Amended Complaint contains sufficient allegations to survive the pending Motion to Dismiss. See Detris v. Coats, 523 Fed. Appx. 612, 617 (11th Cir. 2013) (concluding that parallel state law claim of battery should be allowed to proceed because plaintiff's excessive force claim should have been allowed to proceed).

Although the Court determines that Rojo's Amended Complaint is sufficient for purposes of surviving a Rule 12(b)(6) motion, the Court also notes that Sergeant Holderbaum and Sheriff Gualtieri are free to raise the defense of qualified immunity at the summary judgment stage.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendants Sergeant Holderbaum and Sheriff Gualtieri's Motion to Dismiss (Doc. # 25) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 22nd day of December, 2015.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE